UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE NOEL BARAHONA,

                              Plaintiff,

                    -v-

KILOLO KIJAKAZI, ACTING COMMISSIONER OF
SOCIAL SECURITY,

                              Defendant.

CIVIL ACTION NO. 22 Civ. 4007 (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Jose Noel Barahona ("Mr. Barahona") commenced this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) (the "Act"), seeking review of the denial by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA") of his application for Supplemental Security Income ("SSI"). (ECF No. 1 ¶¶ 1, 12–13). The parties consented to Magistrate Judge jurisdiction for all purposes (ECF No. 12), and cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF Nos. 16 ("Mr. Barahona's Motion"); 22 (the "Commissioner's Motion," together, the "Motions")). For the reasons set forth below, Mr. Barahona's Motion is DENIED and the Commissioner's Motion is GRANTED.

## II. BACKGROUND

### A.  Historical Background

Mr. Barahona was born in 1968 and was 49 years old when he applied for SSI benefits. (Administrative Record ("R.") 22, 39). He was educated through the eleventh grade in Nicaragua.

(R. 70, 290).  He lives alone and has not engaged in any work in over 15 years.  (R. 70, 250).  His last employment, in 2000, was as an office cleaner, which required him to carry 25 pounds frequently and 50 pounds occasionally.  (R. 300).  He alleges that he is unable to work due to hearing and back impairments, his HIV-positive status,[1] anxiety, and vertigo.  (R. 41).  He underwent unsuccessful surgery on his ear in 1992 and 2013, and now wears hearing aids which enable him to hear.  (R. 41–42, 110).

### B.  Medical Evidence

Mr. Barahona and the Commissioner have each provided largely consistent summaries of the medical evidence in the Record.  (See ECF Nos. 17 at 7–9; 23 at 10–11).  The Court adopts the parties' summaries as accurate and complete and sets forth below the additional facts relevant to the analysis of the Motions.

Mr. Barahona's treating physician is Jean-Louis Salinas, M.D. ("Dr. Salinas").  (R. 291).  For Mr. Barahona's HIV, which he has had since 1992, Dr. Salinas has prescribed Epevir, Viracept, and Viramir.  (R. 110, 291, 387–420, 428–503, 511–14, 555–609).  As of June 2017, his CD4 count was 732 and a viral load was undetectable.[2]  (R. 110, 389, 392).  By 2018, his CD4 count was in the 900s and his viral load remained undetectable.  (R. 557).  For his hearing and, starting in 2020, vertigo, Mr. Barahona has visited the New York Eye and Ear Infirmary.  (R. 292, 370–85, 516–53).

---

[1] Human immunodeficiency virus, or HIV, is the virus that causes Acquired Immune Deficiency Syndrome ("AIDS").  See HIV vs. AIDS, https://www.webmd.com/hiv-aids/hiv-aids-difference (last visited Aug. 27, 2023).

[2] "The CD4 count is a predictor of the onset of serious opportunistic infections associated with AIDS." Anderson v. Astrue, No. 07 Civ. 7195 (LTS) (AJP), 2008 WL 655605, at *4 n.7 (S.D.N.Y. Mar. 12, 2008) (citing The Merck Manual of Diagnosis & Therapy 1628-29 (18th ed. 2006)), adopted by, 2008 WL 2463885 (S.D.N.Y. June 18, 2008).  When the CD4 count falls below 200, an individual has increased vulnerability to opportunistic infections.  Id.; see 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.00(F)(4).

A prescription for Meclizine has "improve[d]" his vertigo symptoms.  (R. 522).  Mr. Barahona has not seen an orthopedist or had x-rays of his back, and, as of December 2020, reported no joint or back pain, swelling, stiffness, or muscle aches.  (R. 308, 607).  Mr. Barahona previously controlled his anxiety with Klonopin as prescribed by Dr. Salinas, but he "now just tries to relax himself" and is not under the care of a psychiatrist.  (R. 308, 512, 589).

C.  **Administrative Proceedings**

On April 25, 2017, Mr. Barahona filed an application for SSI benefits (the "Application"), alleging disability beginning on January 1, 2013, based on his HIV-status, back impairment, hearing impairment, and anxiety.  (R. 15, 98–103, 289).

1.  **The First Administrative Proceeding**

On July 26, 2017, the SSA denied his Application and Mr. Barahona requested a hearing before an administrative law judge ("ALJ").  (R. 105–112, 138).  On April 26, 2019, ALJ John Allen held a hearing, at which Mr. Barahona appeared pro se and without the assistance of a Spanish interpreter.  (R. 61–62 (the "First Hearing")).  After explaining the procedure for the hearing and reviewing the record evidence, ALJ Allen asked Mr. Barahona a series of questions about his background and medical conditions.  (R. 63–77).  After hearing testimony from a vocational expert, ALJ Allen agreed to keep the record open for updated medical records from Mr. Barahona's treating physician and took the matter under advisement.  (R. 81–82).  On November 6, 2019, ALJ Allen denied Mr. Barahona's Application (R. 116–23), but the Appeals Council vacated that decision and remanded with instructions to:  (i) provide Mr. Barahona or his representative an opportunity to review and comment on the available evidence; (ii) obtain additional evidence concerning his impairments; and (iii) further evaluate his mental impairment

in accordance with 20 C.F.R. § 416.920a and provide specific findings and appropriate rationales for each of the functional areas described in 20 C.F.R. § 920a(c).  (R. 129–30; <u>see</u> R. 15, 195).

### 2.  <u>The Second Administrative Proceeding</u>

#### a.  <u>The Second Hearing</u>

Following remand, on February 24, 2021, ALJ Lori Romeo held a telephonic hearing. (R. 29–59 (the "Second Hearing")).  Mr. Barahona appeared <u>pro se</u> and used the interpreter supplied by the SSA, although at times he responded in English to the ALJ's questions.  (R. 29, 31–33, 36).  The ALJ assured Mr. Barahona that it was "perfectly okay" for him to participate in the hearing through the interpreter.  (R. 39–40).  The ALJ explained that although the SSA does not arrange or pay for an attorney, public interest organizations might represent him if he qualified, or he could retain a private attorney.  (R. 33).  Mr. Barahona stated that he understood he had the right to have an attorney at the hearing, but "want[ed] to do it now."  (R. 34; <u>see</u> R. 35 ("I'd rather do it today.")).  After explaining to Mr. Barahona how the hearing would proceed and reviewing the exhibits and the history of communications with the SSA about his Application, the ALJ asked him a series of questions about his background, education, and symptoms.  (R. 36–48).

Mr. Barahona testified that he suffers from impairments to his hearing and his back, anxiety, and vertigo, and is HIV-positive.  (R. 41–42).  He can sit for three hours, stand for one hour, walk 20 blocks, and lift 20–25 pounds despite his back impairment.  (R. 42–44).  He testified that, with his HIV medication regimen, he is asymptomatic.  (R. 44).

Mr. Barahona testified that he had previously seen a psychiatrist who gave him medication that "ma[de] him feel worse," but testified that his current medication "does help" him.  (R. 45–46).  His anxiety causes him to "feel stupid" and "get confused," and renders him

unable to "function well."  (R. 46).  Although he felt anxious during the hearing, he maintained that he could "explain [his] case."  (Id.)  He testified that, since August 2021, he has experienced dizziness from vertigo three times.  (R. 47).  On the first occasion, he could not get out of bed and remained seated all day.  (Id.)  Since beginning medication, however, the dizziness is not "severe[]" and is "milder."  (R. 47–48).  Mr. Barahona testified that he was able to take public transportation "sometimes" and do his laundry and shopping.  (R. 48).  In response to the ALJ's question whether he wanted to state anything else about his medical conditions, Mr. Barahona stated, "I think we spoke about everything."  (Id.)

The ALJ then heard testimony from vocational rehabilitation specialist Dr. Amy Vercillo (the "VE").  (R. 49).  The ALJ posed a hypothetical involving a person of Mr. Barahona's age, education, limited ability to read and write in English, history of no past work, and ability to work at all exertional levels, but with the following limitations:

> [B]ecause of a hearing impairment and vertigo, he is limited to work environments which have no greater amount of noise than at the moderate level of noise defined by the DOT [Dictionary of Occupational Titles] and the SCO [Selected Characteristics of Occupations].  And should not work on ladders, should not work on scaffolds, should not work near bodies of water, or near dangerous machinery. Because of some nonexertional limitations, the person is limited to work that requires little or no judgment to do simple duties that a person can learn on the job in a short period of time, 30 days or less.  Usually an SVP:  1 or 2, as rated in the SCO.  A person is further limited to low stress work defined as only occasional decision making, and only occasional changes in work setting, and can have only occasional interaction with coworkers, and should not work with the general public.

(R. 53).[3]  In response to the ALJ, the VE responded that there was work in the national economy that such a hypothetical person could perform, including hand packer, for which there were

---

[3] The SCO, which are part of the DOT, define noise intensity level for each profession by assigning a grade to each job on a five-point scale from "very quiet" through "moderate" to "very loud," and providing

400,000 positions in the national economy.  (R. 54).  When the ALJ added the limitation to light

work, the VE responded that such a person could be a small product assembler, of which there

were 170,000 positions; office cleaner, of which there were 120,000 positions; and labeler, of

which there were 190,000 positions.  (R. 54–55).  Mr. Barahona elected not to ask any questions

of the VE.  (R. 57).

The ALJ then provided Mr. Barahona a final opportunity to share any additional

information regarding his medical conditions, but he declined to do so and agreed that "he was

able to explain everything even though he was nervous and anxious."  (R. 57–58).

### b.  The ALJ Decision and Appeals Council Review

On March 18, 2021, ALJ Romeo issued a decision denying Mr. Barahona's Application.

(R. 15–23 (the "ALJ Decision")).  ALJ Romeo followed the five-step disability determination

process.  (Id.)  At step one, the ALJ found that Mr. Barahona had not engaged in substantial gainful

activity since April 25, 2017, the Application date.  (R. 17).  At step two, the ALJ found that

Mr. Barahona had four substantial impairments:  bilateral conductive hearing loss, anxiety

disorder, HIV, and vertigo.  (R. 18).

At step three, the ALJ found that Mr. Barahona did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the

impairments under the Act's regulations.[4]  (R. 18–19).  The ALJ found that his hearing impairment

---

illustrative examples of each noise level.  See Lisa T. v. Comm'r of Soc. Sec., No. 21 Civ. 469 (DB), 2023 WL
203363, at *10 n.2 (W.D.N.Y. Jan. 17, 2023) (citing U.S. Dep't of Labor, Selected Characteristics of
Occupations Defined in the Revised Dictionary of Occupational Titles (1993)).  "Examples of 'moderate'
noise include 'business office where typewriters are used; department store; grocery store; light traffic
[and] fast food restaurant at off-hours.'"  Bridget P. v. Comm'r of Soc. Sec., No. 21 Civ. 654 (CFH),
2023 WL 2402782, at *13 (N.D.N.Y. Mar. 8, 2023) (quoting SCO).

[4] The impairments listed in 20 C.F.R. Appendix 1, Subpart P, Part 404, are known as the "Listings."

did not meet Listing 2.10 (Hearing Loss not Treated with Cochlear Implantation) because he "is able to hear at 25 decibels and earned a word recognition score of 100% with or without hearing aids. (R. 18 (citing R. 421–23)). His vertigo did not meet Listing 2.07 (Disturbance of Labyrinthine-Vestibular Function) because his condition was not confirmed by testing and because he testified that the vertigo attacks were infrequent. (R. 18). His HIV did not meet the severity of Listing 14.11 (Human Immunodeficiency Virus (HIV) Infection) "because his CD4 count generally fell in the range of 700 to 800 during the period at issue and he did not experience manifestations[ or ]complications." (Id. (citing R. 386–420, 428–509, 554–609)). Finally, his anxiety did not meet Listing 12.06 because he did not have at least two "marked" limitations or one "extreme" limitation as is needed to satisfy the "paragraph B" criteria, and the evidence did not establish the "paragraph C" criteria.[5] (R 18–19 (citing R. 386–420, 444, 511, 560)). Specifically, the ALJ found that he had only moderate limitations in (i) understanding, remembering, or applying information; (ii) interacting with others; and (iii) concentrating, persisting, or maintaining pace, and only a mild limitation in adapting or managing himself. (R. 18–19).

Before turning to step four, the ALJ assessed that Mr. Barahona had the residual functional capacity ("RFC") to perform light work[6] with the following limitations:

---

[5] Listing 12.00 covers "Mental Disorders." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00. "Paragraph B of each [Section 12] listing (except 112.05) provides the functional criteria [the Commissioner] assess[es] . . . to evaluate how [a claimant's] mental disorder limits [his or her] functioning." Id. § 12.00(A)(2)(b). Paragraph C of Listing 12.06 provides the criteria the Commissioner "use[s] to evaluate 'serious and persistent mental disorders.'" Id.

[6] Under the Commissioner's regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

> [H]e is limited to work environments that have no greater amount of noise than at the moderate level of noise as defined by the DOT and SCO.  He should not work on ladders/scaffolds, near bodies of water, or near dangerous machinery.  He is limited to work that requires little or no judgment to do simple duties that a person can learn on the job in a short period of time (i.e. 30 days or less), usually SVP of 1 or 2 as rated in the SCO.  He is limited to low stress work, defined as only occasional decision making and only occasional changes in work setting.  He can have only occasional interaction with coworkers but should not work with the public.

(R. 19–20).

At step four, ALJ Romeo concluded that Mr. Barahona had no past relevant work.  (R. 22).  At step five, the ALJ concluded that there were three jobs that exist in significant numbers in the national economy that Mr. Barahona was able to perform:  small products assembler, office cleaner, and labeler; i.e., the three jobs that the VE testified a hypothetical person like Mr. Barahona limited to light work would be able to perform.  (Id.; see R.55).  Accordingly, the ALJ found that Mr. Barahona was not disabled since the Application date.  (R. 23).

On March 22, 2022, the Appeals Council denied review, making the ALJ Decision the final decision of the Commissioner.  (R. 5).

**D.  Federal Court Proceedings**

On May 16, 2022, Mr. Barahona, represented by counsel, filed the Complaint.  (ECF No. 1).  The parties consented to Magistrate Judge jurisdiction for all purposes.  (ECF No. 12).  On December 20, 2022, Mr. Barahona filed his Motion, and on March 20, 2023, the Commissioner filed her Motion.  (ECF Nos. 16; 22).

### III. DISCUSSION

#### A. Legal Standards

##### 1. Standard of Review

Under Rule 12(c), a party is entitled to judgment on the pleadings if he establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Morcelo v. Barnhart, No. 01 Civ. 743 (RCC) (FM), 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003).[7]

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error. See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Judicial review, therefore, involves two levels of inquiry. First, the Court must decide whether the ALJ applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008) ("Calvello I"), adopted by, 2008 WL 4449357 (S.D.N.Y. Oct. 1, 2008) ("Calvello II"). Second, the Court must decide whether the ALJ's decision was supported by substantial evidence. Calvello I, 2008 WL 4452359, at *8. "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a

---

[7] Internal citations and quotation marks are omitted unless otherwise indicated.

reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008). The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts. See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999). In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly. See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999). The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant. See, e.g., Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); Thomas v. Comm'r of the S.S.A., 479 F. Supp. 3d 66, 82 (S.D.N.Y. Aug. 18, 2020) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

Disability-benefits proceedings are non-adversarial in nature, and, therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel. See Lamay v. Astrue, 562 F.3d 503, 508–09 (2d Cir. 2009). To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from his medical sources. 20 C.F.R. § 416.912(b). Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity." Rosario v. Comm'r of Soc. Sec., No. 20 Civ. 7749 (SLC), 2022 WL 819810, at *6 (S.D.N.Y. Mar. 18, 2022). When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others. See 20 C.F.R. § 416.920b. "If a gap exists in

the administrative record[,] then the plaintiff has not been afforded a full and fair hearing and

the ALJ has failed in his or her duty to develop the administrative record." Dufresne v. Astrue,

No. 12 Civ. 49 (MAD) (TWD), 2013 WL 1296376, at *5 (N.D.N.Y. Mar. 8, 2013) (citing Hankerson

v. Harris, 636 F.2d 893, 897 (2d Cir. 1980)), adopted by, 2013 WL 1289759 (N.D.N.Y.

Mar. 27, 2013).  On the other hand, "[i]f all of the evidence received is consistent and sufficient

to determine whether a plaintiff is disabled, further development of the record is unnecessary,

and the ALJ may make his or her determination based upon that evidence."  Dufresne,

2013 WL 1296376, at *5 (citing 20 C.F.R. § 416.920b(a)).  Absent "obvious gaps" in the record,

the ALJ is not required to supplement the record.  Rosa v. Callahan, 168 F.3d 72, 79 n.5

(2d Cir. 1999).

   The Act authorizes a court, when reviewing decisions of the SSA, to order further

proceedings:  "The court shall have power to enter, upon the pleadings and transcript of the

record, a judgment affirming, modifying, or reversing the decision of the Commissioner [], with

or without remanding the ca[]se for a rehearing."  42 U.S.C. § 405(g); see Butts v. Barnhart,

388 F.3d 377, 382 (2d Cir. 2004) ("Butts I").  If "'there are gaps in the administrative record or the

ALJ has applied an improper legal standard,'" the Court will remand the case for further

development of the evidence or for more specific findings.  Rosa, 168 F.3d at 82–83 (quoting

Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further

findings or explanation will clarify the rationale for the ALJ's decision.  See Pratts, 94 F.3d at 39.

If, however, the reviewing court concludes that an ALJ's determination to deny benefits was not

supported by substantial evidence, a remand solely for calculation of benefits may be

appropriate.  See, e.g., Butts I, 388 F.3d at 386 (discussing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000)).

      **2.  Benefit Eligibility**

For purposes of SSI benefits, one is "disabled" within the meaning of the Act, and thus entitled to benefits, when he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(3)(A).  The Act also requires that the impairment be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(3)(B).  In reviewing a claim of disability, the Commissioner must consider:  "(1) objective medical facts; (2) diagnosis or medical opinions based on those facts; (3) subjective evidence of pain and disability testified to by claimant and other witnesses; and (4) the claimant's background, age, and experience."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential five-step process set forth in 20 C.F.R. § 416.920(a)(4)(i)–(v).  The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity.  If not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work

> experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the <u>fourth</u> inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. <u>Finally,</u> if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the Claimant could perform.

<u>Bush v. Shalala</u>, 94 F. 3d 40, 44–45 (2d Cir. 1996) (quoting <u>Rivera v. Schweiker</u>, 717 F.2d 719, 722 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof; at step five, the burden shifts to the Commissioner. <u>See</u>, <u>e.g.</u>, <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. <u>See Butts v. Barnhart</u>, 416 F.3d 101, 103 (2d Cir. 2005) ("<u>Butts II</u>"); 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c).

### 3.  The Claimant's Credibility

In considering a claimant's symptoms that allegedly limit his or her ability to work, the ALJ must first determine whether the claimant has "a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms." 20 C.F.R. § 416.929(c); <u>see</u> SSR 16-3p, 2017 WL 5180304, at*2–3 (S.S.A. Oct. 25, 2017). If such an impairment is found, the ALJ must next evaluate the "intensity and persistence of [the] symptoms [to] determine how [the] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 416.929(c)(1). To the extent that the claimant's expressed symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility. <u>See Meadors v. Astrue</u>, 370 F. App'x 179, 183–

84 (2d Cir. 2010) (summary order); Taylor v. Barnhart, 83 F. App'x 347, 350–51 (2d Cir. 2003) (summary order).

Courts have recognized that "the second stage of [the] analysis may itself involve two parts." Sanchez v. Astrue, No. 07 Civ. 931 (DAB), 2010 WL 101501, at *14 (S.D.N.Y. Jan. 12, 2010). "First, the ALJ must decide whether objective evidence, on its own, substantiates the extent of the alleged symptoms (as opposed to the question in the first step of whether objective evidence establishes a condition that could 'reasonably be expected' to produce such symptoms)." Id. "Second, if it does not, the ALJ must gauge a claimant's credibility regarding the alleged symptoms by reference to the seven factors listed [in 20 C.F.R. § 416.929(c)(3)]." Id. If the ALJ does not follow these steps, remand is appropriate. See id. at *14–15.

When a claimant reports symptoms that are more severe than medical evidence alone would suggest, SSA regulations require the reviewing ALJ to consider specific factors in determining the credibility of the claimant's symptoms and their limiting effects. SSR 16-3p, 2017 WL 5180304 at *7–8. These seven factors include: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms; (4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See Bush, 94 F.3d at 46 n.4; 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *4–9.

B. **Application**

Mr. Barahona advances three arguments in support of his request for reversal of the ALJ Decision:  (1) the ALJ failed to develop the record to include a medical opinion from a treating or examining physician (ECF No. 17 at 11–16); (2) the ALJ failed to properly assess his RFC (id. at 16–18); and (3) the ALJ improperly evaluated the credibility of Mr. Barahona's subjective statements of his disability.  (Id. at 18–21).  The Commissioner responds that the ALJ's findings were based on substantial evidence and an adequately developed record, and that the ALJ properly evaluated Mr. Barahona's subjective statements.  (ECF No. 23 at 13–30).  The Court evaluates the threshold issue of the adequacy of the record, see Rosa, 168 F.3d at 79, before turning to Mr. Barahona's remaining arguments.

1. **The ALJ adequately developed the record.**

Mr. Barahona argues that the ALJ erred by determining his RFC "without further developing the record to include medical opinions from either a treating or an examining physician." (ECF No. 17 at 22).  He contends that the ALJ should have obtained "medical opinion evidence regarding his physical impairments and[/]or an assessment of [his] functional limitations." (Id.)  The Commissioner responds that the record "contained more than adequate treatment notes and other evidence to allow the ALJ to assess [Mr. Barahona's] functional capacity," and that "[t]here was no inconsistency in the evidence that needed to be resolved." (ECF No. 23 at 21–22).

As discussed above (see § III.A, supra), the Second Circuit has emphasized an ALJ's "affirmative obligation to develop the administrative record."  Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).  An ALJ is not required to develop the record further, however, if the evidence is

"adequate for him to make a determination as to disability." Id. at 48. The Court finds that the ALJ satisfied his duty to develop the record in this case. While Mr. Barahona is correct that the record does not contain a formal medical opinion from Dr. Salinas, the record does otherwise contain extensive treatment records and notes reflecting Dr. Salinas' consistent view as to Mr. Barahona's medical conditions and ability to function. (R. 110, 291, 387–420, 428–503, 511–14, 555–609). Those treatment records include notes, testing, and diagnoses for visits from 2017 through 2020, many of which were for routine or preventive examinations. (R. 555–609). In those notes, Dr. Salinas noted that, in February 2020, Mr. Barahona's anxiety was "controlled" by Klonopin. (R. 589; see R. 603 ("no depression, anxiety")). Dr. Salinas also noted Mr. Barahona's "stable" CD4 count and undetectable viral load. (R. 595, 599). Throughout these visits in 2020, Mr. Barahona did not report any "joint or back pain, swelling, stiffness or muscle aches." (R. 595, 599, 603, 607). In an examination at the end of November 2020, in fact, Dr. Salinas described Mr. Barahona as a "[w]ell adult male." (R. 603).

Dr. Salinas' treatment records, which demonstrate that Mr. Barahona obtained relief for his conditions through medication and other conservative treatment, are therefore more substantive than the record consisting "mostly of test results and laboratory reports" deemed insufficient in Diberardino v. Comm'r of Soc. Sec., No. 17 Civ. 2868 (PKC), 2018 WL 3404141, at *3 (E.D.N.Y. July 12, 2018). (ECF No. 17 at 13). Here, the ALJ considered and relied on Dr. Salinas' more recent treatment records in determining Mr. Barahona's RFC (R. 20–21 (citing R. 386–420, 428–509, 554–609)), and Mr. Barahona does not point to any different or additional records from Dr. Salinas that existed but the ALJ failed to collect and consider. In addition, the record contains treatment records from the New York Eye and Ear Infirmary, which document Mr. Barahona's

100% speech recognition score and improvement of his vertigo with medication.  (R. 522, 534, 540).  Therefore, the ALJ "had no further obligation to obtain additional information from" Dr. Salinas or any other treating providers.  Perez, 77 F.3d at 48; see Calero v. Colvin, No. 16 Civ. 6582 (PAE), 2017 WL 4311034, at *9 (S.D.N.Y. Sept. 26, 2017) (holding that ALJ adequately developed record by, inter alia, obtaining and considering more recent treatment records).  Given the absence of any inconsistency in the record and the fact that the "ALJ reviewed and extensively discussed a well-developed record," the ALJ was not required to obtain a consultative examination.  Stephanie M. v. Comm'r of Soc. Sec., No. 21 Civ. 2123 (PAE) (GRJ), 2022 WL 2733441, at *4 (S.D.N.Y. May 13, 2022), adopted sub nom. by, McLean v. Comm'r of Soc. Sec., 2022 WL 2733518 (S.D.N.Y. June 1, 2022); see Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 32 (2d Cir. 2013) (summary order) (explaining that "an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it"); Villalobo v. Saul, No. 19 Civ. 11560 (CS) (JCM), 2021 WL 830034, at *22–23 (S.D.N.Y. Feb. 9, 2021) (explaining that consultative examination was not necessary where record contained sufficient evidence to permit ALJ to determine RFC), adopted by, 2021 WL 735734 (S.D.N.Y. Feb. 25, 2021); Glena v. Colvin, No. 15 Civ. 510 (MAT), 2018 WL 739096, at *5 (W.D.N.Y. Feb. 6, 2018) (finding that ALJ's failure to obtain consultative examination was not legal error where "the medical evidence, combined with Plaintiff's own statements, indicates relatively mild physical impairment, allowing the ALJ to make an RFC assessment without an expert medical opinion").

Mr. Barahona's pro se status at the Second Hearing does not alter the Court's conclusion that the ALJ adequately developed the record.  (See ECF No. 17 at 11–12).  The ALJ explained to Mr. Barahona—through a Spanish interpreter—his right to have an attorney present, to which

he responded clearly, "I understand, but I want to do it now."  (R. 34).  The ALJ then carefully explained to Mr. Barahona how the Second Hearing would proceed, reviewed with him the evidence that would be admitted, and confirmed that he was not aware of other outstanding records.  (R. 34–39).  When Mr. Barahona responded to some questions in English, the ALJ reassured him that it was "perfectly okay" to rely on the interpreter.  (R. 40).  In response to questions from the ALJ, Mr. Barahona testified that he could hear with his hearing aids, sit for up to three hours, walk up to 20 blocks, and lift 20–25 pounds.  (R. 42–46).  Mr. Barahona also agreed that his medications "help[ed]" his anxiety and his vertigo, and that he was able to "explain [his] case" to the ALJ.  (R. 46).  Finally, when the ALJ offered Mr. Barahona a final opportunity to add to the record, Mr. Barahona stated that he "was able to explain everything even though he was nervous and anxious."  (R. 58).  Mr. Barahona's conduct during the Second Hearing was consistent with his other communications with SSA representatives, during which he spoke clearly "and had no difficulty hearing" with his hearing aids, acknowledged he understood the hearing process, and admitted that he was receiving neither orthopedic nor psychiatric treatment.  (R. 308–09).

Accordingly, under the circumstances of this case, the Court finds that the ALJ adequately discharged his duties to develop the record and provide Mr. Barahona with a full and fair hearing.

### 2.   The RFC is supported by substantial evidence.

Mr. Barahona argues that the ALJ's RFC determination is not supported by substantial evidence insofar as the ALJ failed to account for his need for unscheduled breaks and the effects of vertigo.  (ECF No. 17 at 16–17).  Mr. Barahona also reiterates his argument, which the Court has rejected above, that the ALJ should have obtained a medical opinion to support the RFC.  (Id.)

The Commissioner responds that, in determining the RFC, the ALJ considered and incorporated each of Mr. Barahona's impairments such that substantial evidence supports the RFC. (ECF No. 23 at 13–18).

The RFC determination represents "the most [a claimant] can still do despite [his] limitations," based on all the relevant evidence in the record.  20 C.F.R. § 404.1545(a)(1).  The RFC reflects the Commissioner's assessment of "the 'nature and extent' of a claimant's physical limitations and capacity for work activity on a regular and continuing basis."  Elliott v. Colvin, No. 13 Civ. 2673 (MKB), 2014 WL 4793452, at *19 (E.D.N.Y. Sept. 24, 2014) (quoting 20 C.F.R. § 404.1545(b)).  "The RFC determination is reserved to the Commissioner."  Ramirez v. Saul, No. 20 Civ. 2922 (NSR) (JCM), 2021 WL 4943551, at *11 (S.D.N.Y. July 2, 2021), adopted by, 2021 WL 4264253 (S.D.N.Y. Sept. 20, 2021) (citing Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) (summary order)).  The ALJ must set forth the RFC "'with sufficient specificity to enable the Court to decide whether the determination is supported by substantial evidence.'"  Acevedo v. Saul, No. 20 Civ. 8027 (GWG), 2021 WL 6110933, at *8 (S.D.N.Y. Dec. 27, 2021) (quoting Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  "[U]ltimately the ALJ is tasked with reaching an RFC assessment based on the record as a whole."  McKnight v. Comm'r of Soc. Sec., No. 17 Civ. 1054 (CS) (JCM), 2018 WL 4062705, at *11 (S.D.N.Y. Aug. 24, 2018).  The Commissioner's role is to weigh the evidence and resolve any conflicts.  See Gasperini v. Comm'r of Soc. Sec., No. 20 Civ. 6022 (SLC), 2022 WL 970522, at *6 (S.D.N.Y. Mar. 31, 2022).  The claimant bears the "burden to prove that [he] should have a more restrictive RFC than the one assessed by the ALJ."  Villalobo, 2021 WL 830034, at *16; see Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (explaining that the Act places the burden on the claimant "to

prove a more restrictive RFC"); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner [] may require.") (emphasis added).

As to Mr. Barahona's dispute of the ALJ's RFC determination, then, this Court's review "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). Under this standard, "once an ALJ finds facts, the court can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Herrera v. Comm'r of Soc. Sec., No. 20 Civ. 7910 (KHP), 2021 WL 4909955, at *9–10 (S.D.N.Y. Oct. 21, 2021) (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) and holding that substantial evidence supported RFC where the ALJ "grappled with inconsistent records," noted and discussed conflicting evidence, including objective tests, the claimant's statements, "and arrived at a decision based on the record as a whole"). The question for the Court, then, is whether "no reasonable factfinder could have reached the ALJ's conclusions about [Mr. Barahona's] RFC." Herrera, 2021 WL 4909955, at *11.

As discussed above, the ALJ determined that Mr. Barahona has the RFC to perform light work subject to several limitations:

> [H]e is limited to work environments that have no greater amount of noise than at the moderate level of noise as defined by the DOT and SCO. He should not work on ladders/scaffolds, near bodies of water, or near dangerous machinery. He is limited to work that requires little or no judgment to do simple duties that a person can learn on the job in a short period of time (i.e. 30 days or less), usually SVP of 1 or 2 as rated in the SCO. He is limited to low stress work, defined as only occasional decision making and only occasional changes in work setting. He can have only occasional interaction with coworkers but should not work with the public.

(R. 19–20).  In determining Mr. Barahona's RFC, the ALJ considered each of his impairments: "bilateral hearing loss, episodes of dizziness, and panic attacks."  (R. 20).  The ALJ began by noting Mr. Barahona's own testimony that his "medication lessens his anxiety and dizziness," his ability to lift 25 pounds, sit for three hours, stand for one hour, and walk for 20 blocks, and his ability to take public transportation, shop, and do laundry.  (Id.)  The ALJ observed that this testimony was corroborated by other evidence in the record that his medications were effective.  (R. 21 (citing R. 389, 395, 420, 430, 449); id. (citing R. 516); see also R. 557 (in 2018, noting HIV and anxiety were "stable" on medication regimens), 589 (in 2020, noting panic attacks "controlled" by Klonopin), 600 (prescription to take Klonopin "as needed")).

To the extent that Mr. Barahona's impairments limited his functional abilities, the ALJ addressed them and incorporated appropriate limitations into the RFC.  First, the ALJ acknowledged his bilateral hearing loss for which he had undergone surgeries but noted records showing his "reported improvement in his hearing after he began using hearing aids in 2017" and "100% speech discrimination even without hearing aids."  (R. 20 (citing R. 421–23, 515–53)).  To address any limitation arising from his hearing impairment, the ALJ accordingly limited him to "environments that have no greater amount of noise than at the moderate level of noise as defined by the DOT and SCO."  (R. 21).  The effect of this limitation was to restrict Mr. Barahona to work environments comparable to a business office or department store (see n.3, supra), and he has not adduced evidence that a different noise level was required.   See Smith, 740 F. App'x at 726.

Second, as to Mr. Barahona's complaints of dizziness or vertigo, the ALJ observed that the "occasional" episodes "last[ing] seconds" did not cause him to seek emergency care or

hospitalization and had "lessened in frequency and severity secondary to medication." (R. 21 (citing R. 516, 533)). Mr. Barahona's ability to perform numerous activities of daily living, including taking public transportation, combined with the effectiveness of the medication, thus constitutes substantial evidence supporting the ALJ's assessment that Mr. Barahona maintained the ability to work provided he did "not work on ladders/scaffolds, near bodies of water, or near dangerous machinery." (Id.) See Frazier v. Comm'r of Soc. Sec., No. 16 Civ. 4320 (AJP), 2017 WL 1422465, at *13 (S.D.N.Y. Apr. 20, 2017) (holding that substantial evidence supported ALJ's finding that claimant with vertigo was able to work with restriction "against jobs involving heights, exposed moving machinery or driving").

Third, as to his HIV status, the ALJ determined that "restricting [him] to light physical exertion adequately addresses any limitations stemming from his HIV." (R. 21). The ALJ noted Mr. Barahona's "limited treatment and the lack of objective findings of physical abnormalities." (Id.) Substantial evidence supports the ALJ's RFC determination in this respect. The ALJ observed that "his viral load was undetectable and his CD4 count generally ranged from 700 to 800," and that his "[p]hysical examinations were generally unremarkable and his treatment was limited to routine follow-up appointments." (Id. (citing R. 388–89, 394–95, 401–402, 405, 407–408, 414–15, 420, 430, 435, 439, 456, 460)). Courts faced with similar decisions that HIV-positive claimants with undetectable viral loads and stable CD4 counts but without a history of opportunistic infections or other complications were not disabled under the Act. See Castro v. Apfel, No. 99-6009, 1999 WL 568022, at *1 (2d Cir. July 30, 1999) (affirming ALJ's decision that HIV-positive claimant, who was asymptomatic and had an immunological profile was within normal limits, was not disabled); Mendez v. Astrue, No. 09 Civ. 4798 (JG), 2010 WL 2232676, at *4

(E.D.N.Y. June 1, 2010) (affirming ALJ's decision that HIV-positive individual who was asymptomatic and was "stable" with antiretroviral therapy was not disabled and was able to "perform the full range of light work"); Alvarez v. Barnhardt, No. 02 Civ. 3121 (JSM) (AJP), 2002 WL 31663570, at *12 (S.D.N.Y. Nov. 26, 2002) (affirming ALJ's decision that 43-year old HIV-positive man who was no longer able to perform heavy lifting but was able to perform sedentary work was not disabled); Gonzalez v. Massanari, No. 01 Civ. 503 (DLC), 2002 WL 362759, at *6 (S.D.N.Y. Mar. 6, 2002) (affirming ALJ's decision that HIV-positive claimant was not disabled and was able to perform light work despite some possible medication side effects and fatigue); Perez v. Apfel, No. 99 Civ. 2183 (NRB), 2000 WL 124818, at *4 (S.D.N.Y. Feb. 1, 2000) (affirming ALJ's decision that HIV-positive claimant was not disabled and was able to perform sedentary work); Oyola v. Apfel, No. 98 Civ. 4746 (DLC), 1999 WL 511970, at *7–12 (S.D.N.Y. July 20, 1999) (same).

Fourth, to accommodate for Mr. Barahona's anxiety, the ALJ limited him to work requiring "little or no judgment to do simple duties that a person can learn on the job . . . [in] 30 days or less," involving "low stress work" with "only occasional decision making and only occasional changes in work setting" and "only occasional interaction with coworkers" and no interaction with the public. (R. 21). Substantial evidence supports the ALJ's conclusion that additional limitations were not warranted given "the lack of objective findings indicative of cognitive or behavioral deficits," and the evidence of conservative treatment through medication management as well as his abilities to "take public transportation, shop, and do laundry independently." (Id.) See Roxanne C. v. Kijakazi, 628 F. Supp. 3d 405, 416 (D. Conn. 2022) (finding that ALJ "properly accounted for Plaintiff's mental limitations in assessing her RFC" where the

record demonstrated that her symptoms were "mild," occurred "randomly," and were "well controlled").

In conclusion, the ALJ appropriately considered and accounted for each of Mr. Barahona's physical and mental limitations in determining the RFC, substantial evidence supports the ALJ's finding that Mr. Barahona was not disabled, and he has not met his burden to show that a more restrictive RFC was warranted.

### 3.   The ALJ properly evaluated Mr. Barahona's subjective statements.

Mr. Barahona also contends that the ALJ improperly evaluated Mr. Barahona's subjective statements regarding his symptoms by "unduly rely[ing] on the objective medical findings" and failing to "state with specificity how she evaluated [his] symptoms or cite to the 'other' evidence." (ECF No. 17 at 18–19).   The Commissioner responds that "the ALJ properly considered [his] subjective complaints and found that they were not entirely supported by the medical and other evidence."  (ECF No. 23 at 27).

As noted above (§ III.A.3, supra), when a claimant reports symptoms that are more severe than medical evidence alone would suggest, the regulations require the ALJ to consider specific factors in determining the credibility of the claimant's symptoms and their limiting effects. SSR 16-3p, 2017 WL 5180304 at *7–8.   These seven factors include:  (1) an individual's daily activities; (2) the location, duration, frequency and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms; (4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to

relieve pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See Bush, 94 F.3d at 46 n.4.

Here, the ALJ considered these factors with respect to each of Mr. Barahona's impairments, cited the record evidence that contradicted Mr. Barahona's subjective complaints, and explained the limitations the ALJ was including in the RFC to accommodate the functionality that Mr. Barahona did have.  For example, with respect to his hearing loss, the ALJ noted improvement in his hearing since 2017, when he began using hearing aids, such that "his speech reception threshold was 25 decibels and he achieved 100% speech discrimination even without hearing aids."  (R. 20 (citing (R. 421–23, 515–53)).  As to his anxiety, the ALJ noted that, although Mr. Barahona complained of panic attacks, "his treatment was limited to medication prescribed by his primary care physician [Dr. Salinas]" and there were no "mental status examinations indicative of behavioral or cognitive deficits."  (R. 21 (citing R. 386–420, 428–509, 554–609)).  Therefore, contrary to Mr. Barahona's complaint that the ALJ used "boilerplate language" (ECF No. 17 at 20), the Court finds that the ALJ in fact did engage in the analysis required to determine the credibility of Mr. Barahona's symptoms and their limiting effects as required by 20 C.F.R. § 416.929(c)(3).

Furthermore, it is well-settled that "[a] federal court must afford great deference to an ALJ's credibility findings because 'the ALJ had the opportunity to observe the claimant's demeanor while [he] was testifying.'"  Dinorah M.L.E. v. Comm'r of Soc. Sec., No. 20 Civ. 8420 (JGK), 2022 WL 2751869, at *4 (S.D.N.Y. July 13, 2022) (quoting Kessler v. Colvin, 48 F. Supp. 3d 578, 595 (S.D.N.Y. 2014)).  Thus, provided the ALJ's credibility determination is supported by substantial evidence, this Court may not disrupt that determination.  Id.  Here, the

ALJ's conclusion was supported by substantial evidence, including Dr. Salinas's description of Mr. Barahona as a "[w]ell adult male," the treatment records demonstrating the management of his symptoms through medication and conservative treatment, and Mr. Barahona's own statements, both at the Second Hearing and to his providers, that he was able to hear with assistance of hearing aids, engage in daily functions, and use public transportation.  (R. 41–44, 47–48, 110, 553–609).  See Oyola, 1999 WL 511970, at *11–12 (affirming ALJ's credibility determination that HIV-positive claimant's subjective complaints were not supported by objective medical evidence showing that she was asymptomatic and could perform daily activities).  The record also reflects Mr. Barahona's decision not to seek additional treatment, such as undergoing further ear surgery or consulting with an orthopedist or psychiatrist.  (R. 517 ("defer surgery for now"), 529 ("[s]till not ready for surgery yet"), 549 ("defers ad[ditional] surgery for now"), 560 ("has not seen psych[iatrist] in a while since Dr. Salinas has been prescribing Rx for [K]lonopin")); see also R. 554–609).  This further undermines Mr. Barahona's subjective complaints.  See Glena, 2018 WL 739096, at *5 ("Courts have found that a claimant's receipt of only conservative treatment, or the decision not to seek treatment, can undermine the credibility of a claimant's subjective complaints."); Lovell v. Colvin, 137 F. Supp. 3d 347, 354 (W.D.N.Y. 2015) (finding that claimant's "particularly conservative medical treatment" and decisions not to seek specialists for back or mental health impairments "indicate[d] that [he was] not as restricted as he claims").

Having observed Mr. Barahona at the Second Hearing, the ALJ was "well-positioned to assess the credibility of [his] complaints of [impairments] and to compare and weigh those complaints against [his] report of [his] daily activities." Dinorah M.L.E., 2022 WL 2751869, at *4. Contrary to Mr. Barahona's assertion, the ALJ did not improperly inject a lay opinion about "what

therapies and treatments were most appropriate" (ECF No. 17 at 21), but rather observed, from the statements of the treating providers and Mr. Barahona's own admissions, that the treatments he did receive mitigated his conditions such that he was able to work with the limitations prescribed in the RFC.   (R. 20–21).   See Kimberly H. v. Comm'r of Soc. Sec., No. 21 Civ. 269 (FAW), 2023 WL 3138532, at *5 (W.D.N.Y. Apr. 28, 2023) ("[w]hile Plaintiff may disagree with the ALJ's consideration of the medical evidence of record, that does not mean that the ALJ was relying on her own lay opinion in assessing Plaintiff's [] RFC or that the RFC finding is not supported by substantial evidence").  The Court will therefore "defer to the Commissioner's resolution of conflicting evidence," and declines to disturb the ALJ's assessment that Mr. Barahona's subjective statements regarding his impairments were not entirely consistent with the record evidence.  Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).

### IV.CONCLUSION

For the reasons set forth above, Mr. Barahona's Motion is DENIED and the Commissioner's Motion is GRANTED.

The Clerk of Court is respectfully directed to close ECF Nos. 16 and 22 and to close this case.

Dated:      New York, New York
            August 31, 2023

                                    SO ORDERED.


                                    _____
                                    SARAH L. CAVE
                                    United States Magistrate Judge